# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
February 16, 2016 Session at Union University[1]

## STATE OF TENNESSEE v. RODERICK WILLIAMS

### Appeal from the Criminal Court for Shelby County
### No. 13-05948    Lee V. Coffee, Judge

_____

### No. W2015-00832-CCA-R3-CD  -  Filed May 5, 2016

_____

Defendant, Roderick Williams, appeals his convictions for assault, aggravated assault, and aggravated criminal trespassing, and his effective sentence of sixteen years as a persistent offender.  He argues that (1) the evidence is insufficient to support his convictions; (2) the trial court erred in its determination of his offender classification; and (3) his convictions of assault and aggravated assault should be merged.  We affirm the judgments of the trial court and remand for entry of a judgment regarding the charge dismissed before trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed; Remanded for Entry of Judgment

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton (on appeal) and Kamilah Turner (at trial), Assistant Public Defenders, for the appellant, Roderick Williams.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General, Senior Counsel; Amy P. Weirich, District Attorney General; and Leslie Fouche and Jeff Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

_____

[1] This case was heard on the campus of Union University as a special project of the Tennessee Court of Criminal Appeals in furtherance of the educational process of students and faculty.

*Procedural History and Factual Summary*

Defendant was indicted for aggravated burglary, aggravated stalking, and four counts of aggravated assault. The following evidence was presented at trial.

Officer Felicia McGowan of the Memphis Police Department testified that she was dispatched to a location on Leflore Place on April 16, 2013, around 8:40 p.m., based on a domestic disturbance call. Officer McGowan noticed that a 1996 Pontiac Firebird had been driven into the shrubberies, bricks, and rocks of the landscaping. Officer McGowan knocked on the front door, but no one responded. The dispatcher contacted the complainant, who was later identified as the victim, Wanda Sledge. The dispatcher advised her that the police were outside the home; the complainant opened the front door. The victim showed Officer McGowan scratches on her neck and the side of her cheek. Officer McGowan photographed those injuries and observed that the victim was "shaken up, she was upset." The victim reported that the perpetrator was no longer present but that he took her keys and cell phone.

Officer Elizabeth Calhoun and Officer Larry Bailey of the Memphis Police Department were also dispatched to the same residence on April 16, 2013, around 11:43 p.m. When they arrived, Officer Calhoun "saw a lot of blood" and observed that "probably about three of [the victim's] fingers looked nearly severed from her [right] hand, and she also had knots on her forehead." Additionally, there "was blood on the porch, the front hallway, and leading to one of the bedrooms." The victim was crying and very upset. She told Officer Calhoun that Defendant attacked her, and that she pulled out a knife to defend herself after she was attacked. The victim told Officer Bailey that Defendant hit her several times in the face and choked her. Defendant arrived with a knife and a struggle ensued. Defendant cut the victim's hand and hit her in the face and head seven or eight times. When the victim called the police, Defendant fled the scene.

Marqus Cowan of the Memphis Fire Department responded to the victim's home around midnight and treated lacerations on her right hand. After bandaging her wounds, he took her to the hospital. The victim's tendons were cut and required surgery.

The victim testified that Defendant was her boyfriend at the time of this offense and at the time of the trial, and she testified that she still loved him. At the time of the incident, the victim was staying in a rooming house where she paid per week without a formal lease. Defendant was staying with her in the rooming house, but it was in her name and she paid for it. Defendant did not have his own set of keys. They were always together whenever he was in the house.

On April 16, 2013, the victim and Defendant were drinking at her house. The victim had been drinking more than Defendant. She admitted that she was "very much" drunk on the day of the incident because she had been drinking vodka and beer during the day before Defendant arrived at her house that afternoon.

In the early evening, they went for a drive and the victim brought a can of beer with them. As they were driving, they were pulled over for a traffic stop, and Defendant was given a citation because of the victim's open container. The couple got into an argument on the way home which continued at the victim's house. Defendant left, but after ten or fifteen minutes, the victim went looking for Defendant and found him "a couple of streets over." The couple returned to the victim's house where she continued to "fuss" at Defendant. Defendant told the victim to leave him alone, but she continued arguing so Defendant left again. The victim waited about half an hour before again going to look for Defendant, but she could not find him.

When the victim returned home, Defendant was waiting on her porch. Defendant got into the car with the victim, and they tried "to talk the situation out." Defendant "said something," and the victim became angry again. Defendant pulled the victim's hair, and the victim got out of her car and "ran down the street to call the police." The car was still running and halfway in her driveway. She called 911, and a female police officer arrived. When she returned to her residence, the victim noticed that her car was in her neighbor's yard but was unsure how it got there. The victim told the officer that her keys and phone were missing, but she did not recall having any injuries.

Approximately thirty minutes after the officer left the victim's house, Defendant returned with her keys and let himself inside her house. The victim did not give Defendant permission to enter her house. She instructed Defendant to return her keys, but Defendant refused and demanded that the victim return some of his clothing. The victim then ran to her neighbor's house and used the phone to call the police again. Defendant fled with her keys.

Defendant again returned to the victim's house and let himself in. At this point, she was "really mad" and had a knife in her hand. She got the knife from the kitchen. Like before, the victim did not give Defendant permission to enter her home. Defendant began talking to the victim, but she told him that she did not want to talk to him and told him to leave her house. The victim testified that she was mad but not scared. She did not think Defendant would harm her

> because he wasn't trying to do nothing . . . . He was trying to get me to
> calm down because I can get highly upset and carried away, too. So he
> kept walking like he was coming, you know, toward me. Kept saying,
> "Baby, just calm down. Just calm down." And I just kept saying, "I don't

want to calm down. Get out. I don't want to calm down." And one thing, I just kept on and kept fussing. I was mad and upset and already drunk and everything on top of that.

Defendant told the victim to put down the knife, but she refused. He picked up a bottle of shampoo from the floor, and "[t]hat's when [she] ran into him and . . . cut him." Defendant exclaimed, "Baby, you cut me," and left. The victim testified, "And that's when the police came back again, and I was still bleeding, and I didn't know where I was bleeding from. And I looked down, and I had my hand on the blade the whole time that I was—because it was a small knife, and I had my hand on the blade, and I noticed I had cut my fingers." The victim knew that she called the police again, but she could not remember what she told them about the incident. The victim testified that she did not remember being hit by Defendant.

Defendant did not testify, but he stipulated that he was prohibited from assaulting the victim pursuant to an order of bail conditions entered on March 13, 2013, at the time of the offense. Defendant had notice of the order.

The jury found Defendant guilty of assault, a class A misdemeanor, as a lesser included offense of aggravated assault in Count One; guilty of aggravated assault, a class C felony, as charged in Count Two; guilty of aggravated criminal trespass, a class A misdemeanor, as a lesser included offense of aggravated burglary in Count Three; and not guilty of aggravated assault as charged in Count Four and Count Five.[2] The trial court sentenced Defendant as a persistent offender to eleven months and twenty nine days for each of the misdemeanors and to fifteen years of confinement for the felony. All sentences were run consecutively.

*Analysis*

On appeal, Defendant argues that: (1) the evidence is insufficient to support his convictions; (2) the State's notice of enhanced sentencing was inadequate to support the trial court's finding that Defendant was a persistent offender; and (3) his convictions for assault and aggravated assault violate the principles of double jeopardy and should be merged. The State maintains that Defendant's convictions and offender classification are proper.

A. Sufficiency of the Evidence

---

[2] The aggravated stalking charge in Count Six of the indictment was dismissed by the State before trial. The record does not contain a judgment reflecting the disposition of this charge. Upon remand, the trial court must enter a judgment for this charge. *See State v. Marquize Berry*, No. W2014-00785-SC-R11-CD, at 4 (Tenn. Nov. 16, 2015) (order for publication).

-4-

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Specifically, Defendant challenges his convictions for assault and aggravated criminal trespass. Tennessee Code Annotated section 39-13-101(a) provides:

A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

"'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(a)(2).

Tennessee Code Annotated section 39-14-406(a) provides:

A person commits aggravated criminal trespass who enters or remains on property when:

(1) The person knows the person does not have the property owner's effective consent to do so; and

(2) The person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another[.]

For trespass purposes, an owner is "a person in lawful possession of property whether the possession is actual or constructive." T.C.A. § 39-14-401(3). "Effective consent" is "assent in fact, whether express or apparent, including assent by one legally authorized to act for another." T.C.A. § 39-11-106(a)(9).

Defendant argues that he satisfied the statutory definition of an owner and, therefore, could not be considered a trespasser on his own property. Determining the possessory rights of cohabitants can be difficult. *See, e.g.*, *State v. Terrance Dixon*, No. W2011-01432-CCA-R3-CD, 2012 WL 1656721, at *6-7 (Tenn. Crim. App. May 10, 2012) (discussing different cases), *no perm. app. filed*. However, the record supports the jury's determination that the victim was the only lawful possessor of the rooming house where the incident occurred. Although there was no formal lease, the room was in the victim's name and the victim paid weekly to rent the room. The couple had been together at that location for a short period of time. Defendant was staying there with the victim and kept some of his belongings there, but he did not have his own key. There is nothing in the record to indicate that Defendant was anything more than an overnight guest or a cohabitant at the will of the victim. At the very least, the victim revoked her consent to Defendant's presence when she expressly instructed him to leave her house after he entered using the victim's own keys which he had taken without permission from her vehicle. The victim testified that Defendant remained in her house after she asked him to leave, and he did not leave until she fled to a neighbor's house and called the police. Based on the hostile and escalating nature of the couple's interactions up until that point, the jury could easily have inferred that Defendant knew or should have known that his continued presence in the victim's house would have caused her to fear for her safety. The evidence is sufficient to support the Defendant's conviction of aggravated criminal trespass.

Defendant was found guilty of assault in Count One which alleged that Defendant committed aggravated assault by strangulation. Although the victim denied any recollection of Defendant hitting or harming her during their altercation, Officer McGowan testified that, when she arrived at the victim's home, the victim displayed

scratches on her neck and the side of her cheek. This evidence is sufficient for a rational jury to find that Defendant intentionally caused bodily injury to the victim. The jury is entitled to weigh all of the evidence as it sees fit, and we will not second guess its wisdom on appeal. Defendant does not argue that there is insufficient evidence to convict him off aggravated assault in Count Two, and we conclude the record amply supports the conviction. Defendant is not entitled to relief.

## B. Offender Classification

Defendant argues that the trial court erred by sentencing him as a Range III, persistent offender because the State's pre-trial notice of enhanced punishment only identified enough prior convictions for Defendant to be sentenced as a Range II, multiple offender. The State argues that Defendant waived this issue by rejecting a continuance of the trial. Alternatively, the State argues that the pre-trial notice substantially complied with the notice requirement and that Defendant was not prejudiced by the defect.

As relevant to this case, a multiple offender is a defendant with "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable." T.C.A. § 40-35-106(a)(1). A persistent offender, in relevant part, is a defendant with "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable." T.C.A § 40-35-107(a)(1). For both of those offender classifications, "convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." T.C.A. § 40-35-106(b)(4), -107(b)(4).

Defendant's trial began on Monday, January 26, 2015. On Friday, January 23, 2015, the State filed a "Notice of Intent to Seek Enhanced Punishment Pursuant to T.C.A. § 40-35-202," identifying six different prior felony convictions for Defendant. The body of that notice contained an all-inclusive declaration that the State "hereby gives notice that the defendant should be sentenced as a Multiple Offender pursuant to T.C.A. § 40-35-106, a Persistent Offender pursuant to Tennessee Code Annotated, § 40-35-107, or a career offender pursuant to Tennessee Code Annotated, § 40-35-108 as applicable."

Tennessee Code Annotated section 40-35-202(a) requires the prosecution to file a notice not less than ten days before a trial if it "believes that a defendant should be sentenced as a multiple, persistent or career offender." The notice "must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions." *Id.* A defendant may waive the notice requirement with the consent of the State and the trial court. *Id.* However, "[i]f the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial." Tenn. R. Crim. P. 12.3(a). The Advisory Commission Comment on Rule 12.3 explains:

This time limitation will allow defense lawyers an opportunity to plan their trial strategy or engage in appropriate plea negotiations. Nevertheless, since the notice requirement is based on a defendant's prior record, this record may only come to light shortly before trial. Under this and related circumstances, it would be unfair for the state to proceed to trial unable to establish proof at the sentencing hearing. Consequently, the state may provide notice in less than ten (10) days but the defendant is entitled to a continuance to rechart a course of action. If the defendant does not request a continuance, the written notice shall be valid.

A defendant's statutory right to a continuance after a late-filed notice of intent to seek enhanced punishment is absolute, *State v. Lowe*, 811 S.W.2d 526, 526-27 (Tenn. 1991), but failure to request a continuance constitutes a waiver of any objection to untimeliness, *State v. Stephenson*, 752 S.W.2d 80, 81 (Tenn. 1988). However, this Court has previously declined "to extend the *Stephenson* waiver doctrine" to situations where the issue is "a matter of defect in content rather than delay in filing" of the notice. *State v. Debro*, 787 S.W.2d 932, 933 (Tenn. Crim. App. 1990). Accordingly, the State's waiver argument fails because Defendant raises a challenge to the content of the notice rather than its timeliness.

Before the trial began, the trial court offered to grant a continuance to Defendant because of the untimely notice. After discussing the matter with defense counsel, he chose to waive this opportunity. The trial court then questioned Defendant about the waiver on the record, and the following exchange occurred:

Trial Court: Now, do you understand, Mr. Williams, if you are, in fact, convicted of these class C felonies, you would not be sentenced as a range one offender. We'll have [a] sentencing hearing, and I'll make a determination as to what your range of punishment is. And the State has indicated that you may be a persistent or a career offender. Do you understand that?

Defendant: Yes, sir.

Trial Court: And the significance for that, Mr. Williams, to make sure you're making a fully informed decision, is you have five counts in this indictment that are being tried today: four counts of aggravated assault, one count of aggravated burglary. . . . The aggravated burglary is a C felony, and they both—all those five counts, those five charges, carry

-8-

anywhere from three to fifteen years in prison and fines up to ten thousand dollars. Do you understand that, sir?

Defendant:      Yes, sir.

Trial Court:    If you're convicted of aggravated assault, those convictions will probably have to merge because, for sentencing purposes, that would be considered as one offense. The aggravated burglary would be considered a separate offense. And if you're a range one offender, Mr. Williams, I could not sentence you to more than six years in prison. Do you understand that, sir?

Defendant:      Yes, sir.

Trial Court:    If you're a persistent or a career offender, Mr. Williams—If you're a persistent offender, your sentence would be anywhere from ten to as much as fifteen years in prison at a forty-five percent release eligibility. If you're a career offender, I could not sentence you to less than one second less than fifteen years at a sixty percent release eligibility. Do you understand that?

Defendant:      Yes, sir.

Trial Court:    And depending on what the facts are, what other motions the State might file, you're looking at a possible sentence of some thirty years in prison at a sixty percent release eligibility, and if you were a range one offender, I could not sentence you to more than six years at a thirty percent release eligibility. Do you understand that?

Defendant:      Yes, sir.

Defendant testified that he was freely and willingly waiving his statutory right to a continuance. Defendant also acknowledged that he had rejected a plea offer from the State:

Trial Court:    Mr. Williams, for the record, what is your offer in this case, sir?

Defendant:      The last offer was a six.

Trial Court: Six years?

Defendant: Yes, sir.

Trial Court: At a thirty percent or—

Defense Counsel: Your Honor?

Trial Court: —thirty-five percent?

Defense Counsel: Your Honor?

Trial Court: Yes, mam.

Defense Counsel: If I may interject, I don't believe we had a six-year offer at any point.

Prosecutor: It was always ten, Judge.

Defense counsel: Okay. It was a ten-year offer.

Trial Court: Is that a range one or a range two offender . . . ?

Prosecutor: I believe it was range two. I will double-check.

Trial Court: Mr. Williams, your offer has never been less than ten years, apparently. Do you understand that? [The prosecutor] has indicated your offer has been ten years as either a range one or a range two offender.

Prosecutor: Range two, Judge.

Trial Court: A range two offender. That's thirty-five percent release eligibility, Mr. Williams. That's three and a half years that you have to serve before you became eligible for parole. Do you understand that?

Defendant: Yes, sir.

Trial Court: And again, if you're a range three offender, you're looking at some fifteen years at forty-five percent. If you're a career

-10-

offender, you're looking at a mandatory sentence of fifteen years at a sixty percent release eligibility. And you've been in jail now since December 16, 2013, is that correct?

Defendant: Yes, sir.

Trial Court: And I wanted to make sure that you understand—understood, rather, the full punishment on this case and that you understood the consequences of making that decision . . . .

Defendant said that he did not have any questions for the trial court.

At the sentencing hearing, Defendant objected to being sentenced higher than a Range II, multiple offender. The State acknowledged:

[I]t would appear that our motion for [enhanced] sentencing was not only filed late, it was filed imperfectly. We left off a couple of convictions that are on the presentence report that I believe would change the range of Mr. Williams.

However, the State argued that its notice substantially complied with the notice requirement, relying on *State v. Livingston*, 197 S.W.3d 710 (Tenn. 2006).

It was undisputed that three of the six convictions identified in the notice were committed within twenty-four hours of each other, meaning that the notice only identified four prior convictions, which would make Defendant a multiple offender. However, the pre-sentence investigation report revealed that Defendant's criminal history contained at least twelve felony convictions. The trial court agreed with the State that it had substantially complied with the notice requirement and announced that it would consider Defendant's entire criminal history as shown in all of the proof presented at the sentencing hearing. Upon request, the trial court granted a continuance to Defendant of approximately three weeks to further investigate the additional convictions presented by the State. Once the sentencing hearing resumed, the State entered eleven certified judgments of conviction for Defendant.

In *Debro*, this Court addressed a defective notice of intent to seek enhanced punishment. The State's notice in that case erroneously stated that the defendant committed the underlying offense while released on parole when, actually, the defendant was released on bail. *Debro*, 787 S.W.2d at 933. The court rejected the defendant's argument that the pre-trial notice was void, holding that a defendant must demonstrate prejudice from the defective notice before relief is appropriate. *Id.* at 934 (relying on *Stephenson*, 752 S.W.2d at 81 (requiring prejudice for relief from late-filed notice)).

Distinguishing pre-trial notice of intent to seek enhanced punishment from an indictment, the court explained:

> In the case of the allegations contained in an indictment, an accused is considered innocent, and therefore ignorant, of the offense until proven guilty. No such "presumption of ignorance" can be said to attach to allegations in the sentencing notice involving the defendant's prior record or release status, even though those allegations must be proven beyond a reasonable doubt to the trial judge's satisfaction. By its very nature, the notice concerns facts necessarily known to (or verifiable by) the defendant.

*Id.*

Shortly thereafter, in *State v. Adams*, 788 S.W.2d 557 (Tenn. 1990), our supreme court extended *Stephenson*'s prejudice requirement for late-filed notices to defective notices. In doing so, the court explained:

> The purpose of subsection (a) is to provide fair notice to an accused that he is exposed to other than standard sentencing. It is intended to order plea-bargaining, to inform decisions to enter a guilty plea, and to aid to some extent trial strategy. Notice is important not only in preparation for a sentencing hearing, but in evaluating the risks and charting a course of action before trial. The Legislature has expressly placed the responsibility of notice upon the district attorney, along with the discretion to seek enhanced sentencing.

*Id.* at 559. Focusing its analysis on the substantive content of pre-trial notice, the court reasoned:

> When a detail of the required information is omitted or incorrect, the inquiry should be whether the notice was materially misleading. Where an ambiguity or contradiction appears on the face of the notice, defendant has a duty to inquire further.

*Id.* Although it deemed the reasoning of *Debro* "sound," the court distinguished the facts in that case from the facts before it, observing that the State's notice "g[ave] no relevant information at all." *Id.* In *Adams*, the State's notice simply cited Tennessee Code Annotated section 40-35-202 and vaguely declared that it would seek "Enhanced Punishment within the range to which the defendant would be subjected." *Id.* at 558. The notice did not identify any of the defendant's previous convictions, instead listing five enhancement factors relevant to the in-range sentencing determination. *Id.* Ultimately, the court held:

[W]hen the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief. But it is the State's responsibility to assert the appropriate sentencing status in the first instance, and it may not shift these burdens to an accused by filing what is essentially an empty notice.

*Id.* at 559.

Since *Adams*, our courts have struggled to identify the line between empty notice and substantial compliance. In *State v. Taylor*, 63 S.W.3d 400 (Tenn. Crim. App. 2001), we found substantial compliance where the notice of intent failed to specify the exact offender classification it would seek but accurately identified the convictions upon which it would rely, and we noted that the defendant "failed to show any prejudice arising from a lack of knowledge as to which particular range the State was contemplating to seek for purposes of sentencing." *Id.* at 413.

In *State v. Benham*, 113 S.W.3d 702 (Tenn. 2003), the supreme court found that the State had not substantially complied with Section 40-35-202(a) where it provided its "notice" in response to the defendant's request for discovery. In that case, the State alleged that the defendant was a career offender and attached a printout of the defendant's criminal history, which lacked "any indication of the nature of the prior felony convictions." *Id.* at 705. Although the attached criminal history contained "the identity of the courts in which the convictions occurred, and the dates of disposition," the court determined that "the State's casual allusion to the notice statute in its response to a [discovery] request amounted to an 'empty notice' because it did not include all the information required by section 40-35-202(a)." *Id.* The court, however, did not inquire as to whether the defendant was prejudiced by the defect.

In *State v. Livingston*, 197 S.W.3d 710, 713 (Tenn. 2006), the supreme court reiterated that, "[w]hile 'perfect' notice is not required, . . . we have strictly applied the requirement of section 40-35-202(a) that some notice meeting the minimal requirements of the statute be given." Those minimal requirements are "that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction[s], the dates of the convictions, and the identity of the courts of the convictions." *Id.* at 713-14 (footnote omitted).

The outcomes of the numerous unreported cases from this Court are varied. Most, like *Debro*, have found substantial compliance where the notice contains minor factual inaccuracies. *See, e.g.*, *State v. Willie Lewis*, No. W2008-02636-CCA-R3-CD, 2010 WL 1267070, at *6 (Tenn. Crim. App. Mar. 31, 2010) (finding substantial compliance where

dates of some prior convictions were inaccurate and notice did not designate from which division of the convicting courts the convictions came), *perm. app. denied* (Tenn. Sept. 3, 2010); *State v. John Anthony Cline*, No. W2008-01686-CCA-R3-CD, 2009 WL 3103794, at *6-7 (Tenn. Crim. App. Sept. 29, 2009) (finding substantial compliance where dates of convictions were incorrect), *perm. app. denied* (Tenn. Mar. 15, 2010); *State v. James C. McFall*, No. E2001-02712-CCA-R3-CD, 2002 WL 1465920, at *5 (Tenn. Crim. App. July 9, 2002) (finding substantial compliance where conviction classes were inaccurate), *perm. app. denied* (Tenn. Oct. 28, 2002); *State v. Dale E. Phillips*, No. 01C01-9303-CC-00106, 1993 WL 539140, at *4 (Tenn. Crim. App. Dec. 30, 1993) (finding substantial compliance where date of one conviction in the notice was inaccurate), *perm. app. denied* (Tenn. May 2, 1994); *State v. James Taylor*, No. 89-93-III, 1990 WL 50751, at *4-5 (Tenn. Crim. App. Apr. 25, 1990) (finding no prejudice where notice did not identify which conviction was the cause of the defendant's release status), *perm. app. denied* (Tenn. July 19, 1990). Similarly, others have found substantial compliance where the notice does not specify which enhanced offender classification the State intends to seek but does identify upon which prior convictions the State intends to rely. *See, e.g.*, *State v. Justin Hadley*, No. W2014-00985-CCA-R3-CD, 2015 WL 5001166, at *6 (Tenn. Crim. App. Aug. 21, 2015) (finding substantial compliance where generic notice form did not identify range but did contain prior convictions), *perm. app. denied* (Tenn. Aug. 21, 2015); *State v. Norman Branch*, No. W2013-00964-CCA-R3-CD, 2014 WL 3744322, at *11-12 (Tenn. Crim. App. July 28, 2014) (finding substantial compliance where notice did not identify range but did contain prior convictions), *perm. app. denied* (Tenn. Dec. 19, 2014); *State v. Timothy W. Sparrow*, No. M2012-00532-CCA-R3-CD, 2013 WL 1089098, at *26-27 (Tenn. Crim. App. Mar. 14, 2013) (finding substantial compliance where all-purpose notice containing the defendant's entire criminal history contained prior convictions to support enhanced sentence even though the notice did not identify range), *perm. app. denied* (Tenn. Aug 26, 2013); *State v. Ronnie R. Charleston*, No. M2005-02255-CCA-R3-CD, 2007 WL 57074, at *10 (Tenn. Crim. App. Jan. 5, 2007) (finding substantial compliance where notice did not specify range sought but listed prior convictions), *perm. app. denied* (Tenn. June 18, 2007); *State v. Anthony D. Hines*, No. 01C01-9406-CC-00189, 1995 WL 316304, at *4-5 (Tenn. Crim. App. May 25, 1995) (finding no prejudice where convictions contained in notice supported higher classification than the range identified in notice), *perm. app. denied* (Tenn. Nov. 6, 1995); *State v. James Ronald Rollins*, No.03C01-9104CR00112, 1991 WL 253313, at *1 (Tenn. Crim. App. Dec. 3, 1991) (finding substantial compliance where notice did not specify range sought but listed prior convictions), *perm. app. denied* (Tenn. Mar. 16, 1992).

However, previous panels of this Court are split with regard to a notice of intent that does not identify all of a defendant's prior convictions. Some have concluded that such an omission is not fatal, *see, e.g.*, *State v. James Allen Gooch, Jr.*, No. M2011-01135-CCA-R3-CD, 2012 WL 4358195, at *12-14 (Tenn. Crim. App. Sept. 25, 2012)

(finding substantial compliance where notice identified range as career offender even though the listed prior convictions only supported multiple offender but an additional prior conviction presented at the sentencing hearing established persistent offender), *perm. app. denied* (Tenn. Jan. 15, 2013); *State v. Randell Murphy*, No. W2011-00744-CCA-R3-CD, 2012 WL 1656735, at *8-10 (Tenn. Crim. App. May 9, 2012) (finding substantial compliance and no prejudice where pre-trial notice did not identify range and additional convictions not in notice were presented at sentencing hearing), *perm. app. denied* (Tenn. Sept. 19, 2012); *State v. James Tyrone Harbison*. No. 03C01-9808-CR-00271, 1999 WL 804056, at *6 (Tenn. Crim. App. Oct. 6, 1999) (finding substantial compliance where prior convictions in notice were inadequate to support identified range but additional convictions presented at sentencing supported range in notice); *State v. Phillip Craig Mangrum*, No.01C01-9508-CR-00259, 1996 WL 448132, at *3 (Tenn. Crim. App. Aug. 9, 1996) (finding substantial compliance where notice was amended after guilty plea but before sentencing to include additional convictions), while others have concluded contrariwise, *see, e.g.*, *State v. Daniel Leon Lee*, No. M2010-00103-CCA-R3-CD, 2011 WL 1085110, at *7-10 (Tenn. Crim. App. Mar. 23, 2011) (finding no substantial compliance where prior convictions in notice did not support identified range and State introduced eight additional out-of-state convictions at sentencing hearing); *State v. Melvin Shorty*, No. W2009-02284-CCA-R3-CD, 2010 WL 5313268 (Tenn. Crim. App. Dec. 20, 2010) (affirming trial court's decision to sentence the defendant as a Range I offender where notice did not identify range and prior convictions in notice did not support enhanced sentencing, despite an amended notice the day before sentencing which identified two additional out-of-state convictions), *no perm. app. filed*; *see also State v. Robert Sanford Barnes*, No. W2003-02967-CCA-R3-CD, 2005 WL 331376, at *12 (Tenn. Crim. App. Feb. 11, 2005) (suggesting in dicta that trial court could not consider convictions contained in amended notice filed after trial), *no perm. app. filed*.

In this case, the information contained within the notice was accurate, but the notice did not specify which enhanced offender classification the State intended to seek and did not identify all of the convictions upon which the State intended to rely at the sentencing hearing. Because the notice clearly indicates that the State intended to seek enhanced sentencing beyond the range for a standard offender and identified six different prior convictions (although only four by statutory definition), the notice of intent filed in this case simply was not equivalent to the empty notice in *Adams*. However, because the notice was defective by failing to specify which offender classification the State intended to seek and by failing to identify all of the prior convictions upon which the State intended rely, the notice of intent was materially misleading. Under the circumstances of this case, Defendant could not have reasonably known, based on the information contained in the notice of intent, that his enhanced sentencing exposure would be anything more than what was supported by the convictions identified in the notice, which was a Range II, multiple offender. For that reason, the notice was materially misleading because it failed to inform Defendant, before trial,that the State intended to rely on

-15-

additional prior convictions at the sentencing hearing, thereby increasing his sentencing exposure. A notice that fails to elucidate this information to a defendant when making strategic decisions before trial completely undermines the purposes of the notice statute as explained in *Adams*. *See* 788 S.W.2d at 559. Therefore, we believe that Defendant would be entitled to a reduced offender classification and a new sentencing hearing if he can prove that he was prejudiced by the misleading notice.

Based on the record before us, however, we conclude, for several reasons, that Defendant has failed to demonstrate that he was prejudiced by the defective notice. Defendant was on actual notice that the State intended to seek enhanced sentencing beyond that of a multiple offender. When the trial court questioned Defendant about his decision to waive the untimeliness of the notice of intent and to reject the State's plea offer, he was specifically informed that he might be sentenced as a persistent offender or a career offender based on the content of his criminal record. Defendant responded that he understood this potential risk, and neither he nor his counsel raised any objection to the possibility that Defendant could be sentenced in a range higher than what was supported by the notice. Remarks by the prosecutor suggest that another trial court judge had previously informed Defendant of the same. Furthermore, the notice itself, although defective, constructively put Defendant on notice that the State was seeking enhanced sentencing beyond that of a multiple offender. Although the prior convictions identified in the notice actually constituted only four convictions pursuant to statutory definition, on its face, it purportedly identified six convictions which would support sentencing as a persistent offender. Thus, without looking at the judgments for offense dates, Defendant was constructively notified that the State believed he had a criminal history to support enhanced sentencing as a persistent offender. Given that Defendant has a truly extensive criminal history, when faced with the ambiguity in the notice, Defendant should have sought clarification from the State about what range they were seeking. *See Adams*, 788 S.W.2d at 559.

Finally, the facts of this case do not show that there is a reasonable probability that Defendant would otherwise have accepted the plea offer or altered his trial strategy even if he had been properly notified about his enhanced sentencing exposure. Defendant's intent on trying this case was sharply manifested when he informed the trial court that he was willing to forego a misperceived six-year plea offer, which was substantially more favorable than the actual offer of ten years. Moreover, Defendant's trial strategy plainly seems to have been to hope that the victim, with whom he was still in a romantic relationship and who was reluctant to testify against him, would either get "cold feet" and refuse to testify or would offer favorable testimony. This strategy seems to have worked to Defendant's advantage, at least partially, because Defendant was acquitted of two charges and convicted of two lesser-included offenses. Therefore, because Defendant has not alleged and the record does not demonstrate that he was prejudiced by the State's

defective notice of intent to seek enhanced punishment, he is not entitled to relief from his sentence.

To be clear, the State's notice standing alone would cause a different result. However, the notice, along with the very clear admonishment by the trial court before Defendant freely decided to have his case tried that very day, rendered fair notice that he was exposing himself to other than standard offender classification for sentencing.

## C. Merger

Defendant argues on appeal that his convictions for assault in Count One and aggravated assault in Count Two violate double jeopardy. However, Defendant conceded at oral argument that the trial court did in fact merge Count One and Count Two at the hearing on his motion for new trial, and the record so reflects.

## *Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed. However, we remand this case for entry of an additional judgment to reflect the dismissal of Count Six for aggravated stalking.

<br>

_____
TIMOTHY L. EASTER, JUDGE